NOT FOR PUBLICATION

```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
_____
                                   :
FRANCISCO RIVERA NAVARRO,          :
                                   :   Civil Action No. 13-7613 (RMB)
              Petitioner,          :
                                   :
         v.                        :             OPINION
                                   :
J.T. SHARTLE,                      :
                                   :
              Respondent.          :
_____:
```

**BUMB, District Judge:**

    This matter comes before the Court upon Petitioner's submission of his amended habeas petition executed pursuant to 28 U.S.C. § 2241. See Docket Entry No. 3. For the reasons detailed below, the amended petition will be denied.

    Petitioner was arrested on August 18, 2009. The United States thereafter filed a criminal complaint charging Petitioner and his co-defendant, Miguel Torres, with conspiracy to commit a Hobbs Act robbery, use of a firearm in furtherance of a drug trafficking crime, unlawful possession of a firearm, and conspiracy to distribute controlled substance. See USA v. Rivera-Navarro, Crim. No. 09-0886 (BSJ) (S.D.N.Y.), Docket Entry No. 1. On July 22, 2010, Petitioner entered a plea of guilty. See id. Docket Entry dated July 22, 2010. On June 23, 2011, after Petitioner's judgment of conviction was executed, he was placed in custody of the Bureau of Prisons ("BOP") to serve the

remaining three and a half years of his prison term.  See id. Docket Entry No. 55.  A year later, he wrote a letter to Hon. Charles E. Schumer, a United States Senator ("Senator") from New York.  See Instant Matter, Docket Entry No. 3, at 26; see also infra, note 11.  The letter asked for the Senator's assistance with Petitioner's getting "more time in halfway-house."  Id.  In response, the Senator wrote:

> The BOP will only review an inmate's eligibility for halfway-house 17 months prior to his projected release date. [At that point,] the inmate's case will . . . be reviewed by the BOP to determine the suggested duration of the stay in the halfway-house. . . . [Y]our case will be reviewed during [or around the time of] your September 2013 [scheduled] review.  If you do not agree with this information, you can pursue this matter through the Administrative Remedy Process.

Id.

In anticipation of that scheduled review, Petitioner's Unit Team made a preliminary forecast as to the term during which he might be placed in a halfway house; that forecast projected a six-to-nine-month period.  See id. Docket Entry No. 1, at 2. Unhappy with that forecast and the possibility that his upcoming scheduled review might, too, yield a final determination for a halfway house period less than the maximum allowed by the Second Chance Act (i.e., less than a year), Petitioner tried to secure that maximum one-year period by writing another letter to the Senator.  See id. Docket Entry No. 3, at 25.  The Senator forwarded that second letter to the Office of Congressional

2

Affairs ("OCA") which forwarded it to the warden of the FCI Fairton.  See id.  By the time that letter reached the warden, Petitioner's final determination was made by his Unit Team.

> Therefore, the warden informed the Senator that:
>
> On August 7, 2013, [Petitioner's halfway house] placement was [already] considered, and it was determined [that] a five[-]to[-]six[-]month placement in a [halfway house] was appropriate based on [Petitioner's] life [and] general job skills, [etc.]

Id.

Since, at that time, Petitioner appealed his final determination to the warden, the warden also responded to Petitioner's appeal, explaining that the soundness of the preliminary forecast had to be re-evaluated at Petitioner's scheduled review.  See id. at 9.  The warden clarified that this re-evaluation of Petitioner's circumstances was the basis for the final determination that Petitioner's "placement [in a halfway house for] 151 to 180 days was [the most] appropriate."  Id.

Petitioner appealed the warden's response to the Regional Office of the BOP, focusing his challenges on the fact that his final determination was less favorable than the one forecasted. The Regional Office responded with a statement analogous to the warden's and pointed out that the "reconsideration was necessary [since the preliminary forecast] did not adequately consider [Petitioner's true] re-entry needs."  Id. at 13.  In conjunction with that finding, the Regional Office noted that

3

> [all d]eterminations are based on [each individual]
> inmate's needs . . . . [T]he [Second Chance Act] which
> looks at the . . . history and characteristics of the
> inmate, [etc.]

Id. at 14.

The Regional Office decision was issued on October 24, 2013. See id. On November 9, 2013, Petitioner filed with the U.S. Department of Justice ("DOJ") a notice of claim pursuant to the Federal Tort Claim Act, 28 U.S.C. § 1346(b), which the DOJ forwarded to the BOP, pointing out that Petitioner's claims were attacking a BOP determination. See id. at 6. While the DOJ-to-BOP forwarding was taking place, Petitioner wrote his third letter to the Senator, this time complaining about the findings made by his warden and the Regional Office and asking the Senator to ensure that Petitioner would be placed in a halfway house for, at least, the maximum amount initially forecasted, i.e., for nine months. See id. at 19. In response, the Senator wrote:

> The . . . BOP has an Administrative Remedy Program that
> allows inmates to seek redress of complaints such as
> the one you have expressed. . . . [I] encourage you to
> pursue your complaint through [that] Remedy process.

Id. (Senator's letter of December 17, 2013).

On December 17, 2013, Petitioner submitted his original § 2241 petition in this matter. See Docket Entry No. 1. As in his appeals to the warden and the Regional Office, Petitioner's original petition asserted that his rights were violated since he was not allowed a full year of halfway house placement, i.e., the

4

maximum period allowed under the Second Chance Act.  <u>See</u> Docket Entry No. 1.  In addition, Petitioner speculated that his halfway house term was shortened in retaliation for his writing to the Senator.  The Court screened the original petition and, out of an abundance of caution, dismissed it with a narrowly-tailored leave to amend.[1]  The amended petition ("Petition") followed.  It asserted that Petitioner's exhaustion efforts should be deemed completed, and that he needed no less than nine months in a halfway house since he was "homeless" and without any social ties.  <u>See</u> Docket Entry No. 3.  The Petition also asserted a new retaliation claim, claiming that his halfway house term was reduced because he told his Unit Team that he was homeless and without social ties, and the Unit Team accused him of trying to "manipulate" the system by making such emotional plea.[2]  <u>See</u> <u>id.</u>

---

[1] The Court pointed out that: (a) Section 3621 merely required an individualized assessment of every prisoner in light of various statutory factors, including the history and characteristics of that prisoner; and (b) § 2241 petitions should be exhausted administratively, while Petitioner's submission appeared unexhausted.  <u>See</u> <u>Navarro v. Shartle</u>, 2014 U.S. Dist. LEXIS 1536, at *2-4, n.1 (D.N.J. Jan. 7, 2014).

[2] In his Petition, he reiterated that, in light of his homelessness and lack of social ties, he was "a perfect candidate for . . . 365 days in [a] halfway house [since] up to 12 months is needed for an individual to get established in a community and society."  <u>Id.</u> at 1-3.  The Court notes that this recitation differed starkly from the sentencing memorandum presented to the Court.  In that submission, Petitioner anticipated returning to his tightly-knit family with financial support.  <u>See</u> Docket Entry No. 48, at 2-4.

Meanwhile, Petitioner was transferred to a halfway house. See http://www.bop.gov/inmateloc (indicating that Petitioner is now housed at the Residential Reentry Management Office located at 100 29th Street, Brooklyn, New York 11232). Thus, Petitioner's habeas challenges have been mooted by that transfer, in addition to being without merit.[3]

Petitioner's retaliation claims are improperly raised in this habeas matter and should be dismissed for lack of jurisdiction.[4]

---

[3] As this Court already explained in its prior opinion, the Second Chance Act does not guarantee an inmate either one year in a halfway house, or nine months, or a placement for any fixed or minimum period of time, or even a placement for the forecasted term. The Act merely guarantees that the BOP would afford each inmate an individualized assessment in light of the statutory factors, without abusing the agency's discretion.

[4] The courts that addressed retaliation claims have concluded that such claims were a conditions of confinement civil rights challenge that should be: (a) exhausted at all levels of the BOP *separately* from Second Chance Act habeas challenges; and (b) raised in a *separate* civil suit commenced under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), upon the inmate's prepayment of the applicable $350 filing fee. See Sanchez v. Laughlin, 2013 U.S. Dist. LEXIS 116225 (S.D. Miss. June 28, 2013) (citing Spencer v. Bragg, 310 F. App'x 678, 679 (5th Cir. 2009), for the observation that a retaliation claim should be raised in a Bivens action, not a § 2241 petition); Sukup v. Martin, 2012 U.S. Dist. LEXIS 36398 (E.D. Tex. Feb. 6, 2012) ("to the extent petitioner alleges . . . retaliation by prison officials in the review of his [halfway house] placement, such complaints are properly brought in a civil rights action, not a habeas corpus petition") (citing Preiser v. Rodriquez, 411 U.S. 475, 498-99 (1973)); Geiger v. Adler, 2011 U.S. Dist. LEXIS 129453 (E.D. Cal. Nov. 7, 2011) (a retaliation claim is a civil rights challenge improperly raised in a habeas action); Sharma v. Haynes, 2011 U.S. Dist. LEXIS 137775 (S.D. Ga. Nov. 7, 2011) (a retaliation claim woven into an inmate's Second Chance Act challenges has to be raised in a separate Bivens

Petitioner's retaliation claim might be addressed in a habeas matter, cf. Williams v. Fed. Bureau of Prisons, 85 F. App'x 299, 303 (3rd Cir. 2004) ("assum[ing] arguendo that [an inmate] can assert a Paine v. Baker [de facto civil rights] claim in a § 2241 habeas petition if the peripheral impact of that allegation is sufficiently substantial for the purposes of the court's habeas analysis), his claims warrant no relief.[5]  While "[r]etaliating against a prisoner for the exercise of his constitutional rights is unconstitutional," Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012); see also Hartman v. Moore, 547 U.S. 250, 256 (2006) ("Official reprisal for protected speech 'offends the Constitution because it threatens to inhibit exercise of the protected right'") (quoting Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998), brackets omitted), a prisoner states a viable retaliation claim only if he alleges the facts showing: (a) a constitutionally protected conduct; and (b) an adverse action by prison officials of the magnitude sufficient to deter a person of ordinary firmness from

---

action).

[5] See, e.g., Spells v. Ebbert, 2012 U.S. Dist. LEXIS 176868 (M.D. Pa. Dec. 12, 2012) (if an inmate was duly considered for halfway house placement, the BOP final determination cannot qualify as retaliatory even if it yielded a shorter placement term than the one preliminarily projected); Geiger, 2011 U.S. Dist. LEXIS 129453 (a retaliation claim as to halfway house placement merits no relief if it merely rests on the inmate's repeated halfway house placement requests and relies on "the fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").

exercising his First Amendment rights in the future; and (c) a causal link between that protected conduct and the adverse action taken. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Here, Petitioner's original retaliation claim, based on his letters to the Senator, fail to meet Mitchell's second and third prongs. While Petitioner's act of writing his first letter to the Senator qualifies as protected conduct, the record shows that he wrote to the Senator before his preliminary forecast was made and yet he obtained the projected up-to-nine-month term he now qualifies as favorable and seeks to enforce. Moreover, even if Petitioner perceived that forecast as unfavorable, nothing in the record suggests that his Unit Team was even aware of his letter to the Senator.

Petitioner's second letter to the Senator cannot serve as a basis for his retaliation claim either: this is so because the warden received that letter from the OCA *after* Petitioner's Unit Team held his scheduled review and arrived at its final five-to-six-month determination. A fortiori, Petitioner's third letter to the Senator cannot serve as a basis for his retaliation claim since it was written already after Petitioner received the Regional Office's affirmance of the warden's findings.

Petitioner's newly-minted retaliation claim fares even worse since it fails to meet all three prongs of the Mitchell test. Petitioner's latest theory is that he was retaliated for his

statement to the Team Unit that he needed substantial halfway house time due to his "homeless" situation.  See Docket Entry No. 3, at 2 (alleging that this statement caused the Unit Team to accuse him of "manipulating" the system).  However, Petitioner's statement that he was homeless, assuming it to be true, could not qualify as "protected speech."  Also, the alleged retaliatory act, i.e., the final determination that Petitioner's re-entry needs would be best served by five-to-six months in a halfway house, did not deter him from commencing the instant matter, and such act is not sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.  Finally, Petitioner's statement that he was "accus[ed] of . . . manipulating" the system supplies no causal link between his statement that he was homeless/without social ties and the final determination reached upon his scheduled review.

    For the foregoing reasons, Petitioner's habeas challenges will be dismissed as moot.  Petitioner's retaliation claims will be dismissed for lack of jurisdiction or, in the alternative, as substantively meritless.  An appropriate Order follows.

                              s/Renée Marie Bumb
                              **RENÉE MARIE BUMB**
                              **United States District Judge**

Dated: July 8, 2014